UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. |
| FERRELLGAS, INC. | ) |
| | ) |
| Defendant. | ) |

**JOINT STIPULATION OF SETTLEMENT**

WHEREAS, Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), filed a complaint ("Complaint") in the above matter concurrently with the filing of this Stipulation of Settlement ("Stipulation");

WHEREAS, the Complaint alleges claims for civil penalties pursuant to Section 113(b) of the Clean Air Act ("CAA" or "Act"), 42 U.S.C. § 7413(b), against Defendant Ferrellgas, Inc. doing business though a division called Blue Rhino ("Defendant" or "Blue Rhino") for alleged violations of the General Duty of Care imposed by Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1), with respect to a facility at 300 County Road 448, Tavares, Florida (the "Facility");

WHEREAS, Defendant is a marketer and distributor of propane to consumers, and does so through cylinder exchange programs at retail locations under the "Blue Rhino" brand;

WHEREAS, Defendant operates several facilities throughout the United States that refill 20 lb. propane cylinders for distribution at Blue Rhino storage racks stationed at various retail outlets, and Defendant operates one such facility in Tavares, Florida;

WHEREAS, at the Facility, both empty and filled 20 lb. cylinders are stored in segregated areas in a four to five acre asphalt yard located behind the production buildings;

1

WHEREAS, in July 2013, Facility workers segregated groups of full cylinders in pallets that contained cylinders within the pallet group that had paint defects from the UV paint curing process;

WHEREAS, Blue Rhino intended to reprocess all the segregated pallets as incoming returned cylinders in the ordinary course of its business in order to isolate and correct paint defects on specific cylinders within each pallet group;

WHEREAS, on July 29, 2013, several Facility workers began to remove the propane from all the segregated cylinders not by the normal re-filling processing procedures but instead by using a screwdriver to open the bleeder screws on the cylinders segregated in the yard to vent them all into the atmosphere at the same time;

WHEREAS, a forklift operator in the vicinity started a forklift, and a spark from the ignition system ignited propane from the bleeding cylinders causing a fire burst(s) which led to a chain-reaction with numerous other 20 lb. cylinders igniting and exploding;

WHEREAS, some cylinders flew and fell on the Facility and the surrounding area through a series of explosions;

WHEREAS, at the time, the yard contained approximately 79,696 20 lb. propane cylinders, including approximately 38,052 refilled 20 lb. cylinders;

WHEREAS, five workers were severely injured, and one suffered minor injuries as a result of the accidental release;

WHEREAS, the release resulted in approximately $3.5 million in property damage, including minor damage to six businesses and one residence;

WHEREAS, the United States, on behalf of the EPA, has engaged in settlement negotiations with Defendant in connection with allegations that Defendant violated Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1);

WHEREAS, the parties have reached a settlement as set forth herein;

WHEREAS, the United States has filed the Complaint pursuant to that settlement alleging that Defendant violated Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1);

WHEREAS, the Complaint alleges that pursuant to Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1), an owner/operator of a stationary source has a general duty to (1) identify

hazards which may result from accidental releases of extremely hazardous substances, using appropriate hazard assessment techniques; (2) design and maintain a safe facility, taking such steps as are necessary to prevent accidental releases of extremely hazardous substances; and (3) minimize the consequences of accidental releases of extremely hazardous substances (these duties are known as the first, second, and third prongs, respectively, of Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1));

WHEREAS, the United States alleges that National Fire Protection Association ("NPFA") publishes industry standards, including NFPA 58, which requires written operating procedures for all aspects of liquid propane gas transfer, as appropriate for a facility, and must include detail on operator actions to be taken if flammable concentrations of flammable liquids or gases are detected in the facility using fixed detectors, portable detectors, operating malfunctions, or the human senses;

WHEREAS, operating procedures ("Standard Operating Procedures" or "SOPs") provide employees specific information on how to conduct the operations they are required to do as part of their jobs, including preconditions, health hazards, and personal protective equipment, if required and there should be verification that operating procedures are being followed, either by formal audits or informal observation of operations;

WHEREAS, NFPA 58 also requires training to prevent releases and explosions, including initial training requirements and refresher training at least every three years;

WHEREAS, Blue Rhino has developed a set of Standard Operating Procedures for all facilities and classifies them into several categories:  ADM (administrative procedures), POL (company policy procedures), OPR (operating procedures involving transfer of propane), SOP (operating procedures not involving transfer of propane), MNT (maintenance procedures), and QS (quality standard procedures);

WHEREAS, the Complaint alleges that at the time of the July 29, 2013 incident ("Incident"), Blue Rhino failed to have or implement SOPs regarding the venting of propane in a manner that would ensure safe operation of the Facility and failed to have or implement SOPs regarding the handling of leaking cylinders in the yard in violation of the second prong of Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1);

WHEREAS, the Complaint alleges that Blue Rhino had inadequate training on whether or how to vent propane cylinders; on how to properly handle accidental leaks from cylinders, including where to take such leaking cylinders and how to minimize any adverse consequences from such accidental leaks; or on how a propane explosion might occur when propane is vented simultaneously from numerous cylinders in violation of the second prong of Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1);

WHEREAS, the Complaint alleges that Blue Rhino did not adequately identify hazards in the yard which may result from the release of propane using appropriate hazard assessment techniques in violation of the first prong of Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1);

WHEREAS, Blue Rhino denies the allegations in the Complaint;

WHEREAS, in response to the Incident, and to maintain a safe facility, Blue Rhino undertook various actions and instituted multiple changes at the Facility including: immediate shutdown of the Facility for five months to review procedures and perform an investigation of the Incident; installation of an automated infrared deluge system for the bulk propane tanks; purchase of new "LPS" rated forklifts; improvements to the Automated Propane Evacuation and Recovery System (APRS); an upgrade of fire suppression systems; installation of new infrared propane leak detectors; an upgrade of security cameras; installation of a water based cylinder paint system; implementation of one week of re-training for all Facility employees; upgrade and installation of additional smoke detectors; installation of emergency pedestrian gates; performance of a Process Hazard Analysis for the storage yard; inclusion of the storage yard in its Process Safety Management (PSM) Program; and designation of a safe "Vent Zone" with formal written procedures and training for all employees specifying that the only areas where bleeder screws may be opened is at the designated "Vent Zone" and to ensure a cylinder is empty before a valve is removed;

WHEREAS, in response to the Incident, and to maintain a safe facility, Blue Rhino also created, reviewed, and revised a number of Standard Operating Procedures, including SOP 09 (Valve Changing), POL 07 (Product Containment), POL 10 (Responding to a Propane Leak) (formerly OPR-25), OPR 09 (Cylinder Automated Propane Evacuation and Recovery System), OPR 19 (Cylinder Leak Checking), POL 01 (Ignition Source Control Policy), and POL 08

(Storage Yard Guidelines), POL 09 (Traffic Control Policy), and OPR 02 (including OPR-02F1 (Forklift Operations));

WHEREAS, in response to the Incident, and to maintain a safe facility, Blue Rhino also made the following revisions to its employee training program: Blue Rhino updated and incorporated training on the new and amended SOPs, POLs and OPRs identified above; added training on propane alarm systems; revised and expanded several training materials to include, among other things, information relating to the risk of a chain reaction for propane cylinder explosions; added retraining on POLs 07 and 10 and added them as a Monthly Safety Topic; instituted a new HAZMAT course; and created a First Day Training Sign-Off Sheet on the dangers of propane and other procedures to confirm such training was received on an employee's first day;

WHEREAS, the United States and Blue Rhino (the "Parties") agree that settlement of this action without further expense and litigation is in the public interest and that entry of this Stipulation is the most appropriate means of resolving the instant matter.

NOW, THEREFORE, without adjudication or admission of any issue of fact or law, or any determination of liability, and upon consent and agreement of the Parties to this Stipulation, it is hereby AGREED, STIPULATED and ORDERED:

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (Federal question), 1345 (United States as plaintiff), and 1355 (Fine, penalty or forfeiture), and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b) (Civil judicial enforcement). Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §§ 1391(b) and 1395 and pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), because it is the judicial district where Defendant is located, where a substantial part of the events or omissions giving rise to the claim occurred, and where the alleged violations occurred. For purposes of this Stipulation, or any action to enforce this Stipulation, Defendant consents to the Court's jurisdiction over this Stipulation or any such action and over Defendant, and consents to venue in this judicial district.

2. For the purposes of this Stipulation, Defendant agrees that the Complaint states claims upon which relief may be granted.

3. Defendant shall pay a civil penalty of four-hundred thousand dollars ($400,000) together with interest at the rate specified in 28 U.S.C. § 1961 if the penalty is not paid in full within 30 days of the date the signed Order is filed with the Court Clerk.

4. The civil penalty as set forth herein shall be paid to the United States within 30 days after the Court enters this Stipulation by FedWire Electronic Funds Transfer ("EFT") in accordance with written instructions to be provided to Defendant by the Financial Litigation Unit of the U.S. Attorney's Office for the Middle District of Florida. At the time of payment, Defendant shall send evidence of the transfer, together with a transmittal letter referencing this Stipulation, the civil action number and DOJ case number 90-5-2-1-11706, to:

Jordan Noles  
Enforcement and Compliance Assurance Division  
Air Enforcement Branch  
U.S. Environmental Protection Agency  
Region 4  
61 Forsyth Street, S.W.  
Atlanta, Georgia  30303

and:  
Chief, Environmental Enforcement Section  
U.S. Department of Justice  
P.O. Box 7611  
Washington, D.C.  20044

5. If any portion of the civil penalty payable to the United States under Paragraph 4 of this Stipulation is not paid when due, the United States may issue a written demand for payment of stipulated penalties under this Paragraph. Defendant shall, within 30 days of receipt of such written demand, pay a stipulated penalty to the United States of $5,000 for each day that Defendant's civil penalty payment is delayed beyond the due date. Payment of any stipulated penalty to the United States shall be made in the manner set forth in Paragraph 4. The United States, in its sole and unreviewable discretion, may reduce or waive stipulated penalties otherwise payable to the United States under this Stipulation. In addition, interest shall continue to accrue on the unpaid balance through the date of payment.

6. All of the foregoing obligations shall apply to and are binding upon Defendant and its successors, and shall not be altered by any change in ownership or corporate status.

7. Each person signing this Stipulation warrants and represents that he or she possesses full authority to bind the party on whose behalf he or she is signing to all the terms of this Stipulation.

8. Entry of this Stipulation and payment of the penalty stated in Paragraph 3 of this Stipulation, and any stipulated penalties and interest due, resolves the civil claims of the United States alleged in the Complaint against Defendant occurring through the date of filing of this Stipulation.

9. The United States reserves all legal and equitable remedies available to enforce the provisions of this Stipulation, except as expressly stated in Paragraph 8. This Stipulation shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Clean Air Act, or any regulations promulgated thereunder, or under other federal, state or local laws, or permit conditions, except as expressly stated in Paragraph 8.

10. Defendant denies the allegations of violations in the Complaint and Joint Stipulation of Settlement.

11. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to Defendant, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim splitting or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 8.

12. This Stipulation constitutes a final judgment under Federal Rules of Civil Procedure 54 and 58, and it shall constitute an enforceable judgment in accordance with Rule 69 of the Federal Rules of Civil Procedure, and Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3001-3308, and other applicable authority. The United States shall be deemed a judgment creditor for purposes of collection of any unpaid amounts of the civil and stipulated penalties. Further, Defendant shall be liable for attorneys' fees and costs reasonably incurred by the United States to collect any amounts due under this Stipulation.

13. With regard to matters relating to this Stipulation and its enforcement and the filing of the Complaint, Defendant shall identify on the attached signature pages the names, addresses, and telephone numbers of agents who are authorized to accept service of process by mail on behalf of Defendant with respect to all matters arising under or relating to this Stipulation and the filing of the Complaint. Defendant hereby agrees to accept service of process by mail and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and in any applicable local rules of this Court, including, but not limited to, service of a summons.

14. Except as stated in Paragraph 12 of this Stipulation, each party shall bear its own costs and attorneys' fees related to this action.

15. Defendant shall not deduct any civil or stipulated penalties paid under this Stipulation in calculating its federal or state income tax.

AS AGREED AND STIPULATED TO BY THE PARTIES,

IT IS SO ORDERED ON THIS _____ DAY OF _____, 2020.

_____
United States District Judge

THE UNDERSIGNED PARTIES enter into this Joint Stipulation of Settlement in the matter of <u>United States v. Ferrellgas, Inc.</u>

FOR PLAINTIFF THE UNITED STATES OF AMERICA:

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice

<u>/s James R. MacAyeal</u>
JAMES R. MacAYEAL (D.C. Bar # 474664)
jamie.macayeal@usdoj.gov
Environmental Enforcement Section
Environment and Natural Resources
    Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044 7611
Telephone:     (202) 616-8777

MARIA CHAPA LOPEZ
United States Attorney
Middle District of Florida

<u>/s/ Lacy R. Harwell, Jr.</u>
LACY R. HARWELL, JR.
Assistant United States Attorney
Florida Bar No. 714623
Office of the United States Attorney
For the Middle District of Florida
400 N. Tampa St., Suite 3200
Tampa, Florida  33602
Tel. (813) 274-6000
Fax (813) 274-6200
Randy.Harwell@usdoj.gov

OF COUNSEL:

ERIC TRIPLETT
Associate Regional Counsel

Office of Regional Counsel
United States Environmental Protection Agency, Region 4
61 Forsyth Street, SW
Atlanta, Georgia 30303-8960

          */s Leif Palmer*
LEIF PALMER
Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency
Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia  30303

THE UNDERSIGNED PARTIES enter into this Joint Stipulation of Settlement in the matter of <u>United States v. Ferrellgas, Inc.</u>:

FOR DEFENDANT Ferrellgas, Inc.:

_____

_____
[Insert Name, Title, and Address of Authorized Agent]

Agent Authorized to Accept Service on Behalf of Defendant:

_____
Name

_____
Title

_____
Address

\_\_\_
_____
City, State, ZIP Code